UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JERRY CLOWARD,<br><br>    Plaintiff,<br><br>v.<br><br>JOHANNA SMITH,<br><br>    Defendant. | Case No. 1:10-cv-000153-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

  Now pending is Defendant Johanna Smith's Motion for Summary Judgment. (Dkt. 31.) Smith argues that there is no genuine dispute of material fact and no evidence demonstrating that she acted with deliberate indifference, and, as such, she is entitled to summary judgment as a matter of law. (Id. at 2). Cloward has not filed a response to Smith's Motion, and the deadline for a response, January 3, 2012, has expired. After reviewing Smith's arguments, case law, and the record in this matter, the Court will grant the motion and dismiss Cloward's Complaint.[1]

---

[1] All parties appearing before the Court have consented to the jurisdiction of a United States Magistrate Judge. *See* Dkt. 20; Fed. R. Civ. P. 72.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Plaintiff Jerry Cloward is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho Correctional Institution in Orofino (ICI-O). (Initial Review Order, Dkt. 9, p. 1.) Cloward initiated the underlying lawsuit on March 22, 2010. (Complaint, Dkt. 3.)

In his Complaint, Cloward alleges that he developed a severe back problem on or about March 20, 2009. (Dkt. 3, p. 3.) On May 12, 2009, an MRI scan was performed on Cloward's back, and, in October 2009, Dr. Thomas C. Manning recommended back surgery. (Id.) After that date, Cloward saw several prison physicians and physician assistants who treated his back problems with pain medication and other non-surgical treatment. (Id.) Cloward's Complaint, filed in March 2010, asserts that Defendants were deliberately indifferent for failing to provide the surgery, and requested that the prison be ordered to have the surgery performed to repair his back and compensate him with monetary damages. On May 12, 2012, two months after he filed his Complaint, Cloward had the surgery he was requesting. (Exhibit C to Smith Affidavit, Dkt. 31-3.)

It its Initial Review Order, the Court allowed Cloward to proceed with his medical deliberate indifference claim under the Eighth Amendment, and dismissed his claims brought under the First Amendment, Fourteenth Amendment, and Americans with Disabilities Act. (Dkt. 9.)

# SUMMARY JUDGMENT

## A.     Standards of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party may "cit[e] to particular parts of materials in the record," show that "the materials cited do not establish the . . . presence of a genuine dispute, or show that the "adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [his]

own affidavits, or by the depositions, answers to interrogatories, and admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324 (internal quotation marks omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Cloward brings his claim under 42 U.S.C. § 1983, the civil rights statute. To make a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[2] Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state an Eighth Amendment claim regarding prison medical care, Cloward must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The United States Court of Appeals for the Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal quotations omitted), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

---

[2] 42 U.S.C. § 1983, provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The Plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

Cloward must also demonstrate either that Smith personally participated in the decisions regarding his medical care, or that, as a supervisor, Smith directed, or knew of and failed to prevent, the actions causing Cloward's damages or injuries. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In *Starr v. Baca*, 633 F.3d 1191 (9th Cir. 2011), the Court of Appeals for the Ninth Circuit clarified the standard of law for a pleading to state a § 1983 claim against a supervisory state actor:

A defendant may be held liable as a supervisor under § 1983 "if there exists

> either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman [v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)] (internal quotation marks omitted).
>
> "The requisite causal connection can be established ... by setting in motion a series of acts by others," *id*. (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir .2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted).

*Id*. at 1196-97.

**B.    Analysis**

Defendant Smith, as Warden, first argues that she did not participate in any decision regarding Cloward's medical care. Warden Smith states that she is not a medical doctor nor a health care provider herself, but instead relies on the prison's contract provider to provide medical care. However, final responsibility for ensuring that all prisoners in her facility receive proper medical care lies within her authority, and, here, Warden Smith personally was aware of Cloward's request for back surgery after having received a letter from the investigator. (Dkt. 3-1, p. 6.) She chose to delegate the follow-up on Cloward's concerns to others, "relying on [their] representation that the matter

would be taken care of," an action for which she is responsible. (Affidavit of Warden Smith, Dkt. 31-3, ¶ 6.) These facts are enough to show Warden Smith was aware of the health care need and the allegation that the need was not being met adequately, and that she took some action to address the need. Therefore, the allegation of "nonparticipation" does not by itself warrant summary judgment.

Warden Smith next argues that Cloward has failed to show deliberate indifference because Cloward was first treated with conservative measures, and then with surgery. Warden Smith declares that she has reviewed the medical records, showing that Cloward "has received extensive medical care for his complaints of back pain, including surgery." (Dkt. 31-3, ¶ 9.) Cloward has been provided with a copy of his medical records, but has elected not to provide them to the Court. (Dkt. 22, 23.)

The record before the Court reflects that Cloward developed what he described as a "severe back problem" in March 2009, that he had an MRI scan done in May 2009, and that Dr. Manning recommended surgery in October 2009. (Dkt. 3, p. 3.)

Surgery was not scheduled, and, after three months, in January 2010, Cloward complained in a grievance that, even though Dr. Manning recommended the surgery, other prison medical providers wanted to obtain a second opinion. (Dkt. 3-1, p. 5.) Prison officials responded: "You were evaluated by PA Takagi on 2/11/10 at which time non-surgical treatment options were discussed at length. Per chart review, you agreed to

proceed with non-surgical treatment options and Baclofin[3] was ordered." (Id.)

The surgery was performed in May 2010, seven months after it was originally recommended. During that period of time, Cloward was treated with conservative alternatives, including prescription medication. The record does not reflect evidence of deliberate indifference, given that prison medical providers did not ignore Cloward's condition, but rather wished to first try a conservative course of treatment; once that treatment was ineffectual, they authorized the surgery. As noted above, a prison doctor's recommendation for a less-costly treatment option is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d at 989.

Importantly, the record shows that Warden Smith was notified of the recommendation for surgery on February 10, 2010, and March 15, 2010, and, thus, she is not responsible for actions of the medical providers prior to that date. (Dkt. 3-1, p. 6; Dkt. 31-3, ¶ 7.) The treatment provided to Cloward during the period of time Smith was aware of the problem was constitutionally adequate. There is no indication that Smith was acting with deliberate indifference in relying on qualified medical providers to follow-up on Cloward's condition and current care, or that medical providers were acting with deliberate indifference in trying a conservative course of treatment before surgery.

---

[3] Baclofin is a prescription muscle relaxer and antispastic agent used to treat muscle spasm, pain, and stiffness. *See* http://www.drugs.com/baclfen.html (last visited May 5, 2012).

**MEMORANDUM DECISION AND ORDER - 9**

Warden Smith also asserts entitlement to qualified immunity in her summary judgment motion. A threshold question the Court may resolve prior to undertaking a qualified immunity analysis is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right of the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 200, 201 (2001). Because the Court answers this question in the negative, finding that the facts alleged do not show that Smith's conduct violated Cloward's Eighth Amendment right to medical care, the Court does not undertake a full qualified immunity analysis.

## LETTER REQUEST

On November 4, 2011, Cloward wrote a letter to the Court stating that he knows that there is "evidence that proves I killed Bob Jackson in self defense ... in the vault in the Capitol building ... in Boise." (Letter, Dkt. 30). Cloward claims that there "is a Colt .45 automatic pistol [and] 24 bullets," and that he has "been in prison falsely 16 years too long." (Id.).

The Supreme Court of the United States has made clear that, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). As this is not a habeas corpus action, Cloward's informal request is inappropriate, because such relief is unavailable in a civil rights action.

MEMORANDUM DECISION AND ORDER - 10

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 31) is GRANTED; and

2. Cloward's Complaint (Dkt. 3) is DISMISSED with prejudice.

DATED: May 17, 2012

Honorable Candy W. Dale
United States Magistrate Judge